Good morning. May it please the Court, I'm Kari Hong and I represent the petitioners in this matter. There are four reasons, four grounds on which this Court may grant relief. The first two relate to the motion to reopen. On that matter, turning to the first issue, that the BIA abused its discretion when finding that the medical evidence that showed that the youngest child had a cognizable anxiety disorder was not new and material evidence. The BIA abused its discretion because the IJ... Are you talking about the two letters as opposed to the report that was not yet before the Board? Yes. Yes. What's significant is that the IJ only described the condition as sleepwalking, described it as something normal that appeared in adolescence, and expressly asked the petitioners to file a motion to reopen in the event that they had any specific documentation showing that this is a cognizable medical disability. The petitioners took up the IJ on her office, presented that evidence in the form of the letters showing that it was a diagnosed condition, and the BIA erred by saying that the anxiety disorder was the same evidence that it had presented before. Inherently, by recognizing this as a medical condition, the BIA dismissed the evidence that the IJ expressly asked for. This is akin to the Basin case whereby the BIA erred by dismissing the critical evidence that had been the basis of the denial below. The second reason on which this Court can... And the immigration judge asked for that evidence in a sense. Yes. Asked for the evidence and asked for it to be filed in motion to reopen, which is even stronger than the Basin case. The second issue relates to another error in the motion to reopen. In this matter, the BIA noted that there is new evidence that the oldest child, Maura, also was developing symptoms consistent with an anxiety disorder and also that the elderly parent was being exclusively financially supported by the petitioners. Below, the IJ had denied a showing of hardship to the elderly parent on the basis that there were other members in the family that provided financial support to her medical...for her medicine. The motion to reopen, by contrast, submitted evidence showing that a young child in the extended family was severely sick and used all the family's extra resources such that now, after the IJ hearing, the elderly parent was relying exclusively on financial support. It was error for the BIA to dismiss this evidence by requiring medical evidence and not simply relying on affidavits as adequate to show...to meet the evidentiary burden. Now, the two letters, were they from doctors? One was a social worker. The other was from a medical clinic. And the BIA says that it simply showed that the same condition had worsened. Yes. And what's critical is that the BIA did not dismiss the qualifications of the experts, but rather said the evidence of an anxiety disorder was the same as below, when in fact there was no evidence that it was an actual cognizable anxiety disorder. What do you say about the 90-day time limitation? That then leads to the third and fourth errors, which relates on the motion to reconsider their separate and independent errors. I remind the Court, you don't have to agree with me on the third and fourth errors to decide their case. However, on the 30-day issue, it's critical that the petitioners filed the motion to reopen in February. In January, it was denied. Three weeks later, in February 21st, on March 10th, then in April, the BIA said, well, in light of Yegezerin, it was proper to deny the motion to reopen based on the 90-day window. Similar to the error in Yegezerin, the petitioners had no notice that the rule in Yegezerin existed. Furthermore, returning to the document... The problem with the 90 days is, in the other case, they didn't hold it open for the full 90 days, although they were told that there would be more evidence. Here, they issued their decision after the 90 days had expired. What obligation is there to hold the decision until after the 90 days to allow you to submit additional evidence? Well, I would contend that Yegezerin provides two bases. The first, that the due process argument articulated in Yegezerin made clear that the factors were, one, specific notice, and two, that Yegezerin actually did file the evidence that it intended to file. Within the 90 days? Within the 90 days. The 90 days was not critical to the Ninth Circuit authority. However, back to your earlier point, even if you agree with the BIA on that point, what is critical is that Yegezerin also has an abuse of discretion error, a plain legal error, which is simply that the BIA must consider the new evidence that was presented in the motion to reconsider and it was err to dismiss it wholesale based on the procedural defect in the motion to reopen. And here, the IJ knew that the evidence was on its way. Right. The BIA knew. The BIA knew it was on its way. Back to the two letters a moment. The BIA says that it wasn't medical evidence and that even if it were, it didn't rise to the level of exceptional and extremely unusual hardship. Do we have jurisdiction to review a determination that it didn't reach the level of extreme and unusual hardship? No, Your Honor, but that's not what's at issue in this case. Similar to all the cases beginning with Montero, beginning with Ramirez-Perez, beginning with Franco-Rosendo, all of those cases also involve cancellation claims in which there was a legal error regarding the BIA's wholesale failure to review the new legal and evidentiary matters. The end. Well, but if they say that even if they did consider it, that it wouldn't rise to that level, can we review that? No, but that's not at issue before the court. Well, the opinion says even considered in the aggregate, it does not rise to the level of exceptional and extremely unusual hardship. The court does have jurisdiction under Fernandez to review whether the BIA properly considered whether the motion to reopen, quote, fails to satisfy procedural standards such as the evidentiary requirements. What is key here is critical to Basim and critical to Franco-Rosendo, is that the BIA miscategorized, misclassified, and completely ignored the evidence that had been presented to it. The BIA's decision did not say this is inadequate medical evidence. It simply said this evidence that proves that there's a medical condition, it's the same matter that had been presented below. That is not supported by substantial evidence. That is consistent with the court's jurisdiction, and that's consistent with the court's decisions in Mohamed and Franco-Rosendo on which it has granted a petition for review on the review of the cancellation claim presented in the motion to reopen. You want to save some time? Yes, please. Okay. Good morning, Your Honors. May it please the Court. My name is Kosei Igamori, and I represent the United States Attorney General in this case. This petition for review should be dismissed in part and denied in part for the following three reasons. First, this Court lacks jurisdiction to review the Board's denial of petitioner's motion to reopen because that denial was based upon the discretionary finding of hardship. Second, this Court also lacks jurisdiction to review the Board's denial of petitioner's motion to reopen because petitioner fails to raise a colorable constitutional claim. And third, to the extent this Court does have jurisdiction, the Board's decision did not — was not an abuse of discretion in that it was not irrational, arbitrary or otherwise contrary to law. Well, isn't a due process claim, or a so-called due process claim, a colorable constitutional claim? It is not — it is not colorable because petitioner's claim is entirely distinct from the case in Yezhozaran, Your Honor. The petitioner was afforded a fundamentally fair hearing. She was notified back in 2004 of how a submission of psychological documents would help her case. In fact, the petitioners — Yeah, but, you know, look. These are very poor people. They have — you know, they have a problem with the English language. They're dealing with — with one of these — I forget what the medical — what their medical coverage was, huh? Kaiser. You know, they have trouble getting an appointment. We all have trouble getting appointments. And you want to get a report from a doctor, you know. We all have trouble getting reports from doctors. And these folks don't — they just don't have — they just don't have the — not the ability, but they don't have the — to be able to steer themselves through all of these, you know, if you call on the phone, push this button and that button and this button and that button, you know. So it's very, very tough for them. But the government knows that they're going to send this information in because, first, the government asked for it. And the government knew it was on its way. So we're dealing with due process. We're dealing with fairness. Fairness. All right. So that's a colorable constitutional claim. So I don't think you want to waste any more time on that. Certainly, Your Honor. Even if it — I'm speaking for myself. Even if there was jurisdiction because there was a colorable constitutional claim, there is no violation of fundamental fairness in this case. And there's a two-part answer to Your Honor's concern here. First is that Petitioner was represented by counsel. And second is that Petitioner received forms — No, Your Honor. No. And did you see her file? It's that thick, you know. Just her notes are that thick. Now, who was this counsel? It was somebody who represented them before the agency, Your Honor. And is he the person that sent in the asylum claim? It's not clear on the record, Your Honor. However, I just want to note that Ms. Avila did receive forms to fill out the Senate appointment. Who was it that filed the asylum claim for these people? Well, it was Petitioner who filed their asylum claim, Your Honors. And ostensibly, they were represented — But they had — who gave the advice to do that? That's not in the record, Your Honor. No. So what, a notario? That's not in the record, Your Honor. And it's not — Well, how would they know about it if they didn't go to somebody? Respectfully, that's not — Was this person an appearance attorney? Your Honor, that's not in the record. No, it's not in the record. And respectfully — I want the people sitting here to know the way our government runs and how we push people around. And how we're not too concerned about some people's lives. Probably what happened here is they got this terrible advice, Oh, go file an asylum claim. You know, as if — We know that just from our own experience in the cases we've had, that that's kind of a crazy way to advise a client. Maybe it stalls things for a while. I mean, you know that, don't you? Yes, Your Honor, that does occur. However, that is not what's at issue in this case. Petitioner is not raising — Can I ask you a question about that issue, which is, the board said in the denial of the petition for reopening that the respondent's allegations concerning worsening medical condition are not supported by any medical evidence. Now, counsel said they had a letter from the medical clinic. Why is that not medical evidence? Well, it was not sufficient medical evidence, Your Honor. It was merely a one-page report that — It doesn't say sufficient. It says not supported by any medical evidence. Well, Your Honor, as noted by opposing counsel, those two letters were created by medical clinic and a social worker, not any — Well, medical clinic, isn't that medical evidence? Well, perhaps it was prepared by a social worker that works in the medical clinic. Well, perhaps. I don't know. Do you know who the medical clinic's letter was prepared for? No, Your Honor, but it is the alien's burden to establish. Well, they did. They submitted a letter, and you say the government says it's not any medical evidence. And I'm asking you why a letter from a medical clinic isn't any medical evidence, and you say, well, maybe it was prepared by, I don't know, a secretary. Maybe it was prepared by somebody who was passing by. But that maybe doesn't help answer the question. Your Honor, that perhaps is true, but the board still found that even considering all the evidence in the cumulative, that there was not an exceptional and extremely unusual hardship. Well, that's because they thought it wasn't medical evidence. No, Your Honor, because the board specifically stated that even considering all the evidence, even accepting whatever that petitioner asserted was true. Well, even accepting the letter but not as medical evidence. Suppose the board said we have no letters at all, and that was clearly wrong. They had five in the file. Would that be reviewable? Well, to the extent it's a due process violation, yes, Your Honor. But here the board specifically noted the two letters from Theresa Berry and the other person. It noted, it reviewed that evidence, Your Honor. It looked at the letters and stated that there was no medical evidence. So under that context, it must be assumed that the board reviewed those letters. The board thought that the letter from medical clinic constituted no medical evidence. If that's incorrect legally, then the whole foundation of its decision is incorrect. Respectfully, no, Your Honor, because the board found that even accepting all the evidence, that in the cumulative does not rise to the level of exceptional and extremely unusual hardship. That's a discretionary determination in which Congress has disposed of this court's jurisdiction. Yes. Okay. I agree with that. If they said, well, if we did consider this to be medical evidence, we would still do the same thing. That's one thing. But they didn't say that. They said they, after first saying this is not medical evidence, then they say, well, considering all of the evidence, meaning all of the evidence, but no medical evidence. Your Honors, the no medical evidence was to Myra, Your Honors. What? Pardon me? One of the, Carina, the two letters were addressing Carina's problems and not Myra's problems, Your Honors. That's what the board meant by no medical evidence as to the older daughter's anxiety disorders. And I'd just like to note that the older daughter, the one that was before the IJ originally. Yes, Your Honor. And to the extent Petitioners stated that further evidence would be submitted by February 8th, that's not entirely precise, Your Honors. They notified the board that they would undergo a full psychological assessment at that time, yet they did not inform the board when that psychological assessment would be due to the board, Your Honors. Perhaps it could be a year, two years, three years. If it's a broad-based sociological study, it could be a decade, Your Honors. And certainly the board is not obligated to accept bifurcated motions beyond the 90-day deadline required by the regulations. Well, this child was born in this country, wasn't she? Yes, Your Honor. She's an American citizen. Yes, Your Honor. Right by birth. It's her birthright. Is that right? So don't we, we have to think about that, too, don't we? Yes, Your Honor. Let me ask you a question along those lines. Would the government be willing to mediate this case since the equities seem to be so strongly on the side of the Petitioner? Would you like to find out what the actual medical records are? Because the government didn't consider the medical report from the appointment that had been scheduled, that they said they would send in, and didn't come within the 90 days. Now you have that report, and, you know, we do mediate a number of these cases. I wondered whether the government would be willing to mediate this case. Your Honor, respectfully, my time has expired. Well, let me answer the question. Yes, Your Honor. We'll give you more time. No, Your Honor, because the government has found this would violate the spirit of the regulations and the law, Your Honors. A 90-day deadline is by ---- So it wouldn't also violate the spirit of the Constitution? No, Your Honor. Go for three. Well, no, Your Honors, because there's a strict law on filing motions to reopen. There are certain exceptions that apply to that. And if this were to be ---- Now, there's no law that says that the agency can't do what's fair and just if it wants to. Certainly, Your Honor. And this Court is required by Congress to deny a case such as this. I didn't ask you what the Court was required to do. I asked you whether you would be interested in mediating, as the government has in a number of cases, a case in which the law may go either way. It doesn't matter. When the government feels that something may be fair or just, they sometimes mediate and agree to do that. The government does have that option, but it's not necessarily inextricably intertwined with this decision, Your Honor. This Court could deny this petition and dismiss this petition. Or can it? And the Department of Homeland Security could defer removal, Your Honors. Petitioners could also apply for a stay of removal. Whether ---- As I said to you, you have an alternative that we offer the government in a number of cases in which they often accept. If this Court ---- Rather rigid view of the function of the process. You know who's looking down at you? See that picture behind you? It's Judge Levy. He's the greatest mediator of them all. That's true. You didn't know that, did you? I was not aware of that, Your Honor. Yeah, yeah. Well, he's still here, so ---- He's still here, right down that corridor. I've seen his chambers. He's waiting for you. Well, I do have a two-part answer for your concern, Your Honors. First is that the government's position here is that mediation should not be an option because the Board properly found, made its decision. There was no abuse of discretion in this case. But if this Court would ask the government to mediate, certainly that order would not be disregarded by the government, Your Honor. Thank you, counsel. Well, how did it come to the attention of the government? Well, Petitioner filed an asylum application, thereby ---- Yeah, okay, yeah. He filed an asylum application probably because someone suggested this to him who gave him terrible advice, which is given to thousands of people every month in this state. Not this state, California. This state, they get good advice, I guess. But he works steadily, huh? Is that yes? Yes, Your Honor. He pays his taxes, right? Yes, Your Honor. His wife works, right? I want the public to know what we're talking about. Your Honor. That's true, isn't it? Yes, Your Honor. And the case does ---- Okay, that's true. His wife works. They go to church, right? Yes, Your Honor. They take care of their elderly parents, right? Yes. And they also help kids. They donate money and they work to help poor kids in Africa. Don't they do that, too? Yes, Your Honor. Okay, so those are the kind of people we want to throw out of this country. Is that right? It is unfortunate, Your Honor, and I do not agree with that, but Congress has written the law ---- But this is the land of the free and the home of the brave. You don't have to think about that, too. Yes, Your Honor, but ---- Aren't you glad you came today? Yes. It's a privilege, Your Honor. Okay, well, you're a great lawyer, and soon you stick with your job, and soon there will be a new morning and you'll be happy, you know. Thank you, Your Honor. Okay. If I may make three quick comments. First of all, the asylum application is in the record. It's at Citation 713. The second point is that I misspoke regarding the nature of the letter. It was actually one is a medical clinic, the other is a clinic by the Pervomente Group, which I assume to be Kaiser, and that very much says that it is an anxiety disorder that has been diagnosed. Whose letter is signed by? It's 175. Signed by? Someone with the title of MFP from the Department of Psychiatry. And then furthermore, on this issue about whether there was insufficient evidence, the error is that the BIA said that this is evidence that had, quote, already been considered by the immigration judge. We know that to be a mistake. And the third, on the issue of the 90-day issue, I'd just like to bring the Court's attention that the BIA turned around the motion to reopen within three weeks. I've had over 40 cases in this Court. I've never had the BIA turn around a motion to reopen in three weeks. That's an extraordinarily short period of time, and the motion to reconsider contained the evidence that it said was forthcoming. If there are no further questions. Are you with an organization here? No, I'm a solo practitioner. And you've had 40 cases? Yes. Do you specialize? Are you court-appointed? All of it. I do immigration cases. I'm appointed on the CJA panel for criminal cases, and I'm also appointed on civil cases for pro bono cases. Thank you. All right, thanks. How about who advised him to file the asylum application? No one was mentioned in that space whether someone prepared the case. However, it's all typewritten, which would support the inference that you made, Your Honor, that this was the way in which bad attorneys did advise immigrants to get into proceedings so they can apply for cancellation. And given the strong equities of the case, it appears that the immigration lawyer probably gave them the advice at some point. But the record does not make that clear. Okay. Thank you very much. The matter will stand submitted. And we'll come to the next case.
judges: Goodwin, Pregerson, Reinhardt